### DAUM et al. v. JARECKI.
### No. 51 C 1443.

United States District Court
N. D. Illinois, E. D.
April 18, 1952.

Eugene T. Devitt, Chicago, Ill., for plaintiff.

Otto Kerner, Jr., Chicago, Ill., for defendant.

PERRY, District Judge.

This matter came on to be heard by the court, without a jury, upon the complaint of the plaintiffs, together with the exhibits attached thereto, seeking in Count I a refund of $876.92 for the months of August and September, 1950, which amount represented the amounts collected from the plaintiffs by the Collector of Internal Revenue of an alleged cabaret tax. Count II of plaintiffs' complaint sought a permanent injunction restraining the Collector from collecting or attempting to collect an alleged cabaret tax in the amount of $13,598.04, together with interest, which amount had heretofore been assessed but not paid by the plaintiffs, and represented the alleged tax during the period from April 1, 1948 to August 1, 1950. The defendant filed an answer to Count I of plaintiffs' complaint and moved to dismiss Count II of plaintiffs' complaint. The motion to dismiss was heard by the court on January 29, 1952, and said motion was denied. The plaintiffs' motion for a preliminary injunction was by stipulation entered and continued generally upon the agreement by the parties that the matter would remain in status quo until a full hearing upon the merits could be had. Upon the denial of defendant's motion to dismiss, an answer to Count II was filed by the Collector of Internal Revenue and the trial of the case was had on March 19 and March 20, 1952. The plaintiffs were represented by Eugene T. Devitt of Chicago, Illinois, and the Collector of Internal Revenue by Frederick W. Rita, Special Assistant to the Attorney General, of Washington, D.C., and Otto Kerner, Jr., United States Attorney, by John Loobey, Assistant United States Attorney of Chicago, Illinois.

NOW, THEREFORE, upon all the pleadings in the matter and after having heard the testimony of witnesses for the plaintiffs and the defendant, and having examined all of the exhibits introduced in evidence, and the court, by agreement of the parties, having personally visited the premises involved in the controversy, and the court having heard arguments of counsel and being fully advised, does now make its findings of fact and conclusions of law.

Findings of Fact

1. At all times involved in this action, the plaintiffs were co-partners doing business as the Blue Moon Cocktail Lounge and Dining Rooms, which business was at all times involved in this action located on U. S. Highway 20 approximately one mile west of Elgin, Illinois, and said plaintiffs reside in Kane County, Illinois and the Northern District of Illinois.

2. The defendant, at all times involved in this action, was the Collector of Internal Revenue for the First District of Illinois, and was at all times involved in this action a resident of the City of Chicago, Illinois and of the Northern District of Illinois.

3. On or about September 13, 1951, the defendant was duly served with summons and a copy of the complaint in this action by a Deputy United States Marshal for the Northern District of Illinois.

4. This action was brought for the dual purpose of obtaining a refund in the amount of $876.92, this being taxes allegedly levied upon the plaintiffs by the defendant, and collected by the defendant from the plaintiffs purportedly under the terms of 26 U.S.C.A. § 1700(e), and for the purpose of permanently restraining and enjoining the defendant from or attempting to collect a similar tax in the amount of $13,792.14. Thus this action arises under an act of Congress providing for internal revenue.

5. The time involved in this action is from April 1, 1948 to October 1, 1950. During all of this time the plaintiffs operated a cocktail lounge and dining rooms known as the "Blue Moon" in buildings leased by them for the purpose from the owner thereof, Henry B. Willigman. A true and correct copy of the lease pursuant to which plaintiffs occu-

pied the premises in question was introduced in evidence in this action and is marked "Plaintiffs' Exhibit 5." The physical characteristics of the buildings referred to in the lease are accurately portrayed by a copy of an architect's drawing thereof attached to the complaint herein as "Exhibit A" to the complaint.

6. During all of the times referred to herein, the plaintiffs sold food and beverages in the rooms marked either "dining room" or "cocktail lounge" on said drawing. In each of these rooms were located tables, chairs and high chairs for the accommodation of children, for the purpose of serving the patrons meals.

7. On each Saturday night during all of the period involved in this action, Henry B. Willigman, the owner of the premises, operated a dance in the room designated as the "recreation hall" on the architect's drawing referred to in paragraph 5, from 9 P. M. on Saturday to 1 A. M. on Sunday, and during these hours, in addition to selling food and beverages in the cocktail lounge and dining rooms, the plaintiffs sold liquid refreshments at the bar designated "refreshment bar" on said drawing. This refreshment bar is separated from the dance hall proper by a partition approximately five feet high as shown on the drawing, and said refreshment bar is located at a point immediately adjoining a space occupied by the orchestra but separated from the orchestra space by a wooden partition. The sale of refreshments from this refreshment bar is purely incidental to the dancing and patrons are not provided tables or stools from which to partake of said refreshments nor were patrons permitted to take said refreshments upon or across the dance floor. Consumption of beverages was restricted to the bar itself.

8. The lease between Willigman and the plaintiffs constituted the only business arrangement between Willigman and the plaintiffs which existed during the time involved in this action and at no other time was there any other arrangement between Willigman and the plaintiffs. Thus, during the time the Saturday night dance was in progress, Willigman retained exclusive control and use of the dance hall. Willigman engaged the orchestra to play for the Saturday night dances, and independently and separately operated the Saturday night dances. Each person who entered the dance hall was compelled to pay 75¢ each, and no person was permitted to enter who had not purchased a ticket. Willigman paid the federal admissions tax upon each ticket sold by him. Willigman also operated the check room in the dance hall. No federal tax of any nature was imposed upon the receipts from the check room.

9. Immediately adjoining the dance hall proper, and connected thereto by a door approximately 4 feet wide, was located one of the rooms leased by the plaintiffs from Willigman. This room is referred to as the "Pine Room". The door remained open during the time the Saturday dance was in progress but no patron of this Pine Room was permitted to enter the dance hall without paying the 75¢ admission charge to an agent of Mr. Willigman. Patronage in the Pine Room or at the bar in the Pine Room gave no privilege of attending the dance in the dance hall unless the admission charge was paid to Willigman or his agent. It was possible for these patrons in the Pine Room in certain positions in the room to obtain a fleeting glance of one or two couples dancing past the door on the inside of the dance hall. However, it was not possible for any of the patrons in the Pine Room to see the orchestra. The music by the orchestra from the dance hall was on rare occasions, audible to the patrons of the Pine Room. There was located in this Pine Room a juke box which reproduced mechanical music upon the insertion of a nickel. The noise of the juke box in the Pine Room and the noise created by the gathering of patrons for the partaking of refreshments therein clearly made it extremely difficult for any music to be heard from the dance hall, which dance hall was

dimly lighted. The great majority of the patrons of the dance hall entered through the main entrance rather than through the passageway from the Pine Room to the dance hall.

10. In addition to the tables contained in the Pine Room, there were also tables in two small dining rooms. Immediately adjoining the small dining room adjacent to the Pine Room was the main bar or cocktail lounge, which was horse shoe in shape, and in which room there were also tables, chairs and high chairs. The other small dining room was located on the other side of the cocktail lounge. From the bar room and from the small dining rooms it was impossible to see any of the dancers on the dance hall floor and it was impossible to hear the dance music, although with great effort a patron of the main bar might occasionally hear a strain of music. Also located in the main bar was another juke box which played on the insertion of a nickel. Attendance at the main bar, small dining rooms and Pine Room on Friday and Sunday nights when a dance was not in progress was a crowd of people estimated at approximately two-thirds of the number of people patronizing the establishment on Saturday nights. Fish fries were held in this establishment on Friday evenings and family dinners were served on Sunday afternoons and Sunday evenings. Regular meals were also served daily.

11. In August of 1950 the plaintiffs were notified orally by the defendant that they were liable for a cabaret tax upon the food and beverages sold by them in the premises leased by plaintiffs during the period from 9 P. M. to 1 A. M. on Saturday nights when the dance operated by Willigman was in progress. The plaintiffs were informed by the defendant that they were subject to the cabaret tax provided for by 26 U.S.C.A. § 1700 (e). Subsequently, the defendant did levy the so-called cabaret tax against the plaintiffs for the period from April 1, 1948 to August 1, 1950 in the amount of $13,792.14, including tax, penalty and interest. The plaintiffs did not collect a cabaret tax from their patrons on Saturday nights during this period from April 1, 1948 to August 1, 1950. The plaintiffs did collect from their patrons a cabaret tax in the amount of $371.44 for the month of August, 1950, and $505.48 for the month of September, 1950, after the Collector of Internal Revenue orally directed them to do so. This amount was remitted by the plaintiffs to the Collector of Internal Revenue and represents the amount sought by the plaintiffs as a refund under the allegations of Count I of the complaint herein. On November 20, 1950, the plaintiffs filed a claim for a refund with respect to these two latter amounts with the Commissioner of Internal Revenue, but neither the Commissioner or any of his agents took any action with respect to said claim, nor communicated with the plaintiffs with respect to said claim, for more than six months after it was filed. However, on January 31, 1951, the defendant advised the plaintiffs by formal notice sent by registered mail that plaintiffs would be held liable for the cabaret tax on and after February 1, 1951.

12. During the hours between 9 P. M. Saturday and 1 A. M. Sunday on each Saturday during the period involved when Willigman was operating a dance in the "recreation hall" the patrons in all of the premises leased by the plaintiffs from Willigman were "not entitled to be present" at any entertainment as a result of their patronage of these rooms and patrons of the plaintiffs gained no privileges with respect to the ballroom. Such patrons had exactly the same rights with respect to the dance being carried on in the ballroom as any other member of the public—no more and no less.

13. If the defendant is permitted to proceed to attempt to collect the said cabaret tax, penalty and interest in the amounts shown by plaintiffs' Exhibit 3, of $13,792.14, the defendant will cause irreparable damage to the plaintiffs causing them to lose all of their assets and to become completely insolvent. This result is shown by the financial statements of the plaintiffs attached to the complaint, and this condition is brought about because the plaintiffs did not col-

lect the tax from the patrons during the period from April 1, 1948 to August 1, 1950.

14. Plaintiffs have no adequate remedy at law.

15. There are two separate independent proprietors involved herein which constitute for tax purposes two separate legal entities. The conduct of the dance in the ballroom is operated independently and solely by Henry B. Willigman. The refreshment bar, the Pine Room and dining rooms, and the main bar are operated solely and exclusively by the plaintiffs, who do not provide any form of entertainment and who do not operate or conduct their business jointly with Henry B. Willigman.

16. During the course of the trial of this action, counsel for the Government for the first time advanced the contention that the plaintiffs were not taxpayers with respect to amounts collected by them from patrons and paid in taxes as set forth in Count I of the complaint, and that therefore plaintiffs were not entitled to the refund sought by Count I of the complaint. The court finds that the amount of the tax already paid to the Collector, for which a refund is sought, was not paid by the plaintiffs but was collected from the patrons of the plaintiff.

## Conclusions of Law

1. This court has jurisdiction of the parties hereto and of the subject matter of this action and is empowered to grant the relief prayed for in plaintiffs' complaint. This is an action arising under 26 U.S.C.A. § 1700(e), which is an act of Congress providing for internal revenue and therefore this court has jurisdiction of this action pursuant to 28 U.S.C.A. § 1340.

2. The operation by plaintiffs of the business set forth in the findings of fact during the period from April 1, 1948 to October 1, 1950 was not subject to the cabaret tax under the law and under the regulations issued thereunder because the premises involved herein are not a cabaret, roof garden or other similar place within the meaning of Section 1700(e) of 26 U.S.C.A.

3. The assessment of the cabaret tax against the plaintiffs in the amount of $13,792.14 was illegal and not within the purview of Section 1700(e) of 26 U.S.C.A.

4. The plaintiffs, who sold food and refreshments, and the lessor, Henry B. Willigman, who operated the ballroom, are and were two separate taxable entities.

5. The patrons of the refreshment bar were not "entitled to be present" at the dance on account of their patronage at the refreshment bar, nor were such patrons "afforded" any "music and dancing privileges or any other entertainment" as a result of such patronage. Any rights, privileges or enjoyment accruing to such patrons resulted from their patronage of the dance itself to which the service of the refreshments at the refreshment bar were merely incidental. Thus the provisions of Section 1700(e) did not apply to such sales.

6. The patrons of the dining rooms and cocktail lounge operated by the plaintiffs were at no time involved in this action "entitled to be present" at any "public performance for profit" within the meaning of 26 U.S.C.A. § 1700(e). The patrons of the dining rooms and cocktail lounge operated by the plaintiffs were at no time involved in this action "afforded" any "music and dancing privileges or any other entertainment" within the meaning of 26 U.S.C.A. § 1700(e) as a result of their patronage of plaintiffs' dining rooms and cocktail lounge.

7. Excepting the lease between Henry B. Willigman and the plaintiffs which is "Plaintiffs' Exhibit 5" herein, there was at no time involved in this action any agreement, contract, understanding, or obligation between plaintiffs and Willigman. Thus plaintiffs were not concessionaires of Willigman and at no time involved in this action were plaintiffs and Willigman jointly operating a cabaret.

8. Plaintiffs at no time involved in this action provided any "public per-

formance for profit" or any "music and dancing privileges or any other entertainment, except * * * mechanical music alone" for any of their patrons within the meaning of 26 U.S.C.A. § 1700(e).

9. The plaintiffs' patrons and not the plaintiffs in fact paid the cabaret taxes herein assessed, as set forth in Count I of plaintiffs' complaint, and the plaintiffs, not having borne the burden of these taxes, are not entitled to a refund as prayed for in Count I of plaintiffs' complaint.

10. Plaintiffs have no adequate remedy at law and would be irreparably injured if this court did not enjoin the defendant.

11. Plaintiffs are entitled to a permanent injunction against the Collector of Internal Revenue and his successors and agents enjoining and restraining them from collecting or attempting to collect a cabaret tax, penalty and interest referred to in Count II of the complaint in this action from the plaintiffs in this action, or either of them.

Let judgment be entered accordingly.